UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCIE GALLO-O'CONNELL,<br>      Plaintiff<br><br>v.<br><br>THE UNIVERSITY OF MASSACHUSETTS<br>AT AMHERST,<br>KEN TOONG,<br>and DAVID EICHSTAEDT<br>      Defendants. | Civil Action No.: |

**COMPLAINT AND JURY DEMAND**

**<u>INTRODUCTION</u>**

"You can't do this. You have kids." Although this declaration seems to come from a bygone era, the Plaintiff, Marcie Gallo-O'Connell ("Gallo-O'Connell"), a mother of two heard this from her superior, the Defendant, Ken Toong ("Toong"), in the twenty-first century. Shortly after hearing him say this, she learned that he rejected her for full employment to a position she had been performing for almost a year. He hired a childless female applicant that he "liked better".

Gallo-O'Connell began working for the Defendant, The University of Massachusetts at Amherst ("UMass") in November, 2009. She initially applied to be the Assistant Retail Food Services Manager ("Assistant Manager"), a professional staff position that included benefits, but UMass hired a woman without children, Carrie Palow ("Palow"). Instead, UMass offered Gallo-O'Connell a lower level position as the Night Manager for an on-campus restaurant and as a seasonal employee which meant she could not share in UMass' generous benefits. Her supervisor and Director of Retail Dining Services, the Defendant, David Eichstaedt ("Eichstaedt") enticed her to take the position by assuring her that the Assistant Manager

position would open within the year, that he had the power to influence the hiring process, and that he would use this influence to get her hired.  He repeated his assurances throughout her employment when she sought a higher level, non-seasonal position with benefits.

When the childless Assistant Manager left UMass in June, 2010, Eichstaedt made Gallo-O'Connell the "acting" Assistant Manager, but he kept her as a seasonal employee without benefits.  As the "acting" Assistant Manager, Gallo-O'Connell performed successfully.  Because of her performance, although she started at $15.00 per hour, UMass raised her salary several times, ultimately paying her $25.00 per hour.

UMass posted the Assistant Manager's position in mid-September, 2010, and Gallo-O'Connell immediately applied. During her interview, Toong, the Executive Director of Auxiliary Services and final decision maker, in violation of UMass policy, asked Gallo-O'Connell about how many children she had, their ages, whether they were in school, what her childcare arrangements were, and how she and her husband handled their childcare responsibilities.  Over the course of the interview, Toong praised the flexibility of the previous Assistant Manager because she did not have children.  Gallo-O'Connell assured Toong she could work long hours and handle the demanding schedule.

Approximately eight weeks after the interview, Gallo-O'Connell oversaw the inauguration of a new, late night, pizza delivery service.  On the night of its opening, Toong came to monitor the operation.  During his review, he walked past her, pointed at her, and declared, "You can't do this.  You have kids."

Shortly after Toong revealed who he found fit for the Assistant Manager's job, in February, 2011, UMass hired a less qualified woman without children as the Assistant Manager.  Eichstaedt demoted Gallo-O'Connell, leaving her as a seasonal employee without benefits

indefinitely and without prospects for future promotion. After demoting her, Eichstaedt designed a schedule that made it impossible for her to see her husband. Additionally, counter to the norm at UMass, Eichstaedt told her she could had no flexibility to balance work with childcare issues. Gallo-O'Connell complained to UMass' Human Resources that she had been discriminated against and then forced into an impossible position because of her child care responsibilities by Eichstaedt. UMass did not do a good faith investigation of her discrimination complaint. Instead, UMass gave Gallo-O'Connell an ultimatum: comply with the new terms of employment or leave UMass. As a result, Gallo-O'Connell was forced to resign from her position.

Gallo-O'Connell brings this action against UMass for sex discrimination and retaliation in violation of M.G.L. c. 151B and Title VII of the Civil Rights Act and for failure to investigate her claim of discrimination in violation of M.G.L. c. 151B. She brings this action against Eichstaedt and Toong for sex discrimination and retaliation in violation of M.G.L. c. 151B, for interference with her right to be free from discrimination, and for aiding and abetting in discrimination. She seeks compensation for all her lost wages, future lost wages, benefits, emotional distress, and attorneys' fees and costs, all as provided for by law.

## PARTIES

1. The Plaintiff, Gallo-O'Connell, resides at 38B Warren Wright, Belchertown, Hampshire County, Massachusetts. Gallo-O'Connell is a woman and a mother who has two children. At all times relevant to this complaint, Gallo-O'Connell worked for UMass in its Auxiliary Services department and was an employee as defined by Chapter 151B and Title VII.

2. The Defendant, The University of Massachusetts at Amherst, is an educational institution duly formed under the laws of Massachusetts with its principle place of business at 181 Presidents Drive, Whitmore Administrative Building Room 300, Amherst, Hampshire

County, Massachusetts. At all relevant times to this complaint, UMass was an employer as defined under Chapter 151B and Title VII with control over the terms and conditions of Gallo-O'Connell's employment.

3. The Defendant, David Eichstaedt ("Eichstaedt"), is an individual residing at 387 College Highway, Southampton, Hampshire County, Massachusetts. At all times relevant to this complaint, as the Director of Retail Dining Services, Eichstaedt was Gallo-O'Connell's superior as defined under Chapter 151B and Title VII with control over the terms and conditions of her employment.

4. The Defendant, Ken Toong ("Toong"), is an individual residing at 10 Algonquin Drive, Hadley, Hampshire County, Massachusetts. At all times relevant to this complaint, as the Executive Director of Auxiliary Services, Toong was Gallo-O'Connell's superior as defined under Chapter 151B and Title VII with control over the terms and conditions of her employment.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Gallo-O'Connell's claims under Title VII pursuant to 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over Gallo-O'Connell's state law claims under M.G.L. c. 151B pursuant to 28 U.S.C. § 1367 (a) because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this judicial district.

## FACTS

1. Gallo O'Connell has worked in the restaurant business since she was fourteen. In the years directly preceding her job at UMass, from 1995-2008, Gallo-O'Connell and her husband owned a franchise of a delivery style restaurant, D.P. Dough.

2. Gallo-O'Connell applied to be the Assistant Retail Food Services Manager ("Assistant Manager"), a professional, non-union, staff position that included benefits in UMass' Auxiliary Services department, in November, 2009. The compensation for the Assistant Manager position ranged from $42,300 -$52,900 (or between $20.33 per hour and 25.43 per hour) and included the benefits detailed in UMass' Handbook for Non-Unit Professional Staff.

3. At that point, from her ownership of D.P. Dough, she had significant experience successfully running a food service business, including effectively managing and evaluating employees, implementing food safety requirements, marketing the business (including developing new concepts to improve sales), growing the business, developing and improving business operations to run efficiently, advertising, and developing good customer relationships. Because D.P. Dough is a franchise, she also had experience opening and operating new locations.

4. Gallo-O'Connell was rejected in favor of a woman without children, Carrie Palow ("Palow").

5. After rejecting her application, the head of the search committee, Eichstaedt, offered her a lower level position as a Night Manager for the Blue Wall, a campus center restaurant. The Night Manager's responsibilities included oversight of only the Blue Wall's employees and reported to the Assistant Manager.

6. The Night Manager was not only a lower level position, but UMass would hire her as a seasonal employee. She would be paid $15 per hour, and because UMass hired her as a seasonal employee, she would not receive any benefits at all. Additionally, UMass required that she not work (and not be paid) for two weeks at the end of the year.

7. Eichstaedt encouraged Gallo-O'Connell to take the lower level, lesser salaried, seasonal position by explaining that Palow would be leaving within the year, that UMass would post the position again, and that she could reapply. When he offered her the lower level position, he represented that he "held sway" in the hiring process and would advocate that she receive the job.

8. Gallo-O'Connell accepted the Night Manager position based upon representations from Eichstaedt and began working in November, 2009.

9. Eichstaedt allowed her flexibility in her hours as the Night Manager, such as coming in late and making up the time if necessary, to attend to family needs as the occasion arose. This type of flexibility was the norm at UMass when employees needed to take care of their family responsibilities.

10. Gallo-O'Connell performed well as the Blue Wall Night Manager. She received a raise to $18 per hour in January, 2010.

11. In approximately April or May, 2010, Eichstaedt directed Gallo-O'Connell to "shadow" Palow so that she could learn the Assistant Manager's duties.

12. While she and Eichstaedt planned the Founder's Day Barbeque, in April, 2010, Eichstaedt told her that Palow had been an asset because she did not have children and could work any sorts of hours. Although Gallo-O'Connell had never had never been unavailable

because of her children, he repeatedly referenced that Palow's childlessness made her an asset because she had flexible availability.

13. In June, 2010, Palow resigned as the Assistant Manager. After Palow's resignation, in July, 2010, Eichstaedt made Gallo-O'Connell the "acting" Assistant Manager, and Gallo-O'Connell assumed the position. In recognition of her good work, Eichstaedt raised her hourly wage to $22 per hour.

14. Even after Eichstaedt made her the "acting" Assistant Manager, Gallo-O'Connell continued to be a seasonal employee without benefits.

15. During Gallo-O'Connell's employment, four non-seasonal positions opened within Auxiliary Services that had higher pay and higher status and that would have allowed her to receive UMass benefits. However, Eichstaedt discouraged her from applying for any of the positions, again explaining that he "held sway" in the hiring process, making it extremely likely that she would be chosen to fill the Assistant Manager position in a non-acting capacity (and receive benefits). UMass hired men into the four positions.

16. After Eichstaedt made her the "acting" Assistant Manager, Gallo-O'Connell worked many hours, often staying as late as 2:00 a.m. and starting the next day as early as 7:30 a.m.

17. Through the late summer and fall of 2010, Gallo-O'Connell performed her duties well and received frequent praise from Eichstaedt who treated her as next in line for the Assistant Manager position.

18. For example, she skillfully resolved a union conflict with another employee and launched a new, late night, pizza delivery business. When Eichstaedt was out treating a medical problem, she kept the operation running smoothly.

7

19. After she became the acting Assistant Manager, consistent with the norm at UMass, Eichstaedt continued to give her flexibility to attend to her family responsibilities if the need arose, including allowing her to make up time, come in late or leave early, or take short breaks to attend to her children.

20. In September, 2010, UMass posted the Assistant Manager position and Gallo-O'Connell immediately applied. A search committee was assembled to decide who to hire. The duties of a search committee include evaluating and ranking the candidates and making a recommendation to Toong.

21. Eichstaedt was the head of the search committee. He interviewed Gallo-O'Connell for the Assistant Manager position on December 6, 2010.

22. On December 7, 2010, Eichstaedt assured her that she was one of the three final candidates for the position. Another member of the search committee told Gallo-O'Connell that when the search committee sent their recommendations to Toong, she was listed as the first choice.

23. On December 17, 2010, Toong interviewed Gallo-O'Connell. Toong asked Gallo-O'Connell how many children she had, how old they were, whether they were in school, what her childcare arrangements were, how she took care of childcare responsibilities, and where her husband worked. Gallo-O'Connell reminded him that Eichstaedt had just hired her husband as a seasonal employee (who also did not get benefits).

24. UMass' Office of Equal Opportunity and Diversity has a policy setting forth the rules for interviewing job applicants, the Search Procedures: Faculty & Professional Staff. This policy states that interviewers should not make "inquiries concerning spouse, spouse's employment or salary, children, child care arrangements, or other dependents."

25.     During the interview, Toong emphasized the long hours required for the position and explained that Palow had flexibility because she did not have children. Gallo-O'Connell assured Toong that she could work the hours and could be flexible. As Eichstaedt, who represented that he "held sway" in the process, knew, Gallo-O'Connell had been working long hours and had been flexible.

26.     After the interview and throughout January, 2011, Gallo-O'Connell repeatedly followed up with Eichstaedt about the final decision on the Assistant Manager position. Eichstaedt would never respond. During this time, he committed to raise Gallo-O'Connell's wages to $25 per hour.

27.     The late night, pizza delivery service opened during the first weekend of February. On its opening night, Gallo-O'Connell worked late to oversee the operation. While she was working, Toong visited and raved about Gallo-O'Connell's role in the opening and establishment of it.

28.     During his visit, he walked past Gallo-O'Connell, pointed directly at her, and loudly proclaimed, in front of Van Sullivan, another manager, and his own daughter, "You can't do this. You have kids."

29.     On February 11, 2011, approximately two weeks after Toong revealed his prejudices, Eichstaedt delivered the news that Gallo-O'Connell was not chosen for the Assistant Manager because Toong "liked" the other candidate "better".

30.     The other candidate, Stephanie Stacey ("Stacey"), was a woman without any children. She is not more qualified to fill the position. She lacks the long history of restaurant ownership and management experience that Gallo-O'Connell possesses. Unlike Gallo-O'Connell, she had not worked in the position for almost a year.

31. Although Toong apparently believed late hours would be a problem for Gallo-O'Connell because of her children, after Stacey's hire, UMass hired a man to take responsibility for the late night pizza delivery business, part of the duties of the position when Toong hired Stacey. Stacey also received managerial assistance and did not work the long hours Gallo-O'Connell had been working as the acting Assistant Manager.

32. Gallo-O'Connell is not the only mother who has had this experience in Auxiliary Services. Eichstaedt and Toong have hired other mothers as seasonal employees, holding out the promise that they can obtain a regular, professional, non-union staff position with benefits when the position posted. However, at the time Gallo-O'Connell's employment ended, Eichstaedt and Toong had either never posted the positions promised to the mothers or had filled the positions promised to the mothers with a woman without children.

33. Toong and Eichstaedt's pattern of hiring mothers into seasonal positions and never promoting them to benefitted positions; Toong's questions in Gallo-O'Connell's interview; Toong's expressed belief that Gallo-O'Connell could not do the Assistant Manager's job because she has children; Eichstaedt's reference to the childlessness of a female employee as an asset; and the hire of a less qualified, childless woman against the search committee's recommendation all show that UMass rejected Gallo-O'Connell for the Assistant Manager's position because she is a woman with children and based upon an illegal stereotype that a mother is not qualified because of care-taking responsibilities.

34. Toong's decision to choose a childless woman for the Assistant Manager position and basing his choice on a stereotype that a mother was not qualified because of her childcare responsibilities is an individual and distinct act of sex discrimination that underlies UMass' discrimination against Gallo-O'Connell.

35. By rejecting Gallo-O'Connell, Toong also interfered with her right to an equal opportunity for promotion without discrimination based upon her gender.

36. After her rejection for the Assistant Manager's position, Eichstaedt demoted Gallo-O'Connell to a position supervising employees at the Blue Wall. In this position, Gallo-O'Connell reported to a lower level employee, Van Sullivan, the Assistant Retail Dining Manager, who used to be her equal. She also remained a seasonal employee without benefits.

37. Other childless female seasonal employees who applied for professional staff positions moved into them without issue.

38. Eichstaedt's decision to demote her and leave her as a seasonal employee was because she is woman with children and was based upon an illegal stereotype that a mother is not qualified for higher level positions because of care-taking responsibilities. His decision is an individual and distinct act of sex discrimination that underlies UMass' discrimination against Gallo-O'Connell.

39. Gallo-O'Connell's husband also works as a seasonal employee in Auxiliary Services, reporting to Eichstaedt. Therefore, UMass' and Toong's discrimination imposed a serious hardship on Gallo-O'Connell because it left her family without benefits, such as health insurance, and her without paid sick or vacation time. Without health insurance benefits and paid sick time, Gallo-O'Connell's family incurred medical costs when any of them became sick while, at the same time, Gallo-O'Connell lost income when sick or caring for a sick member of her family.

40. Eichstaedt represented to Gallo-O'Connell that remaining in the seasonal, demoted position was what she could expect for her future in Auxiliary Services. This meant the hardship on her family would continue indefinitely.

11

41. After demoting her, Eichstaedt scheduled Gallo-O'Connell to work a schedule which precluded her from ever seeing her husband, who Eichstaedt scheduled to work during all periods when Gallo-O'Connell was not. He also revoked the customary flexibility allowed employees to care for family responsibilities, contrary to Gallo-O'Connell's previous experience and the past practice in Auxiliary Services.

42. In addition, Eichstaedt began disparaging her to her colleagues.

43. The revocation of the customary workplace flexibility, the indefinite limbo as a demoted and seasonal employee, scheduling her opposite her husband, and the disparagement were deliberately designed to drive Gallo-O'Connell out of Auxiliary Services.

44. By revoking the customary flexibility for childcare needs, Eichstaedt forced Gallo-O'Connell into a position where she would have to choose between keeping her job and caring for her children. He put Gallo-O'Connell in this position because she is a woman with children. His action is an individual and distinct act of sex discrimination that underlies UMass' discrimination against Gallo-O'Connell.

45. By forcing Gallo-O'Connell into an impossible position because she is a woman with children, Eichstaedt also interfered with her right to be free from discrimination in the terms, conditions, and privileges of employment.

46. Gallo-O'Connell complained to Kevin Wissmann ("Wissmann"), the Head of Auxiliary Services Human Resources, that she had been discriminated against and that it appeared she was being driven out of Auxiliary Services.

47. UMass' Equal Opportunity and Diversity Office ("EO&D") has a policy which states that "any party" to a discriminatory dispute "may request the intervention of the EO&D

Office to resolve the matter informally. The EO&D Office will attempt to resolve the matter informally with the administrators closest to and best able to discuss the situation."

48. The same policy also states that any "individual or group of individuals may initiate a formal complaint by detailing the factors related to the allegations of discrimination in a written and signed statement."

49. Wissmann did not report the conduct to the EO&D Office, seek informal resolution of Gallo-O'Connell's complaint through the policy, or file a complaint with EO&D about the discrimination as allowed by the policy. Instead, he spoke to Eichstaedt and then told Gallo-O'Connell she could either accept her new situation or leave UMass.

50. Wissman's actions constitute a failure to investigate or remedy Gallo-O'Connell's complaint of discrimination.

51. Gallo-O'Connell also reported that she was discriminated against to Nick Marshall ("Marshall") of UMass' Labor Relations and Human Resources department. Marshall also did not report the conduct to the EO&D Office, seek informal resolution of Gallo-O'Connell's complaint through the policy, or file a complaint with EO&D about the discrimination as allowed by the policy. Instead, he spoke to Wissmann and concluded from this conversation that there was no discrimination.

52. Marshall's actions constitute a failure to investigate or remedy Gallo-O'Connell's complaint of discrimination.

53. Marshall's and Wissmann's failure to address the discrimination or Eichstaedt's actions was retaliation for Gallo-O'Connell's complaint of discrimination and designed to force Gallo-O'Connell from UMass.

54. In light of Eichstaedt's representation that her future with UMass was a dead end, her indefinite relegation to a seasonal position without benefits, the schedule which prevented her from being able to see her husband, Eichstaedt's revocation of the customary flexibility to attend to family needs, Eichstaedt's disparagement, and UMass' failure to take any action in response to her discrimination complaint, made her working conditions so intolerable that any reasonable person in her position would have felt compelled to resign.

55. Gallo-O'Connell resigned from her employment with UMass on February 24, 2011.

56. Because Toong and Eisenstaedt are both UMass employees and supervisors of Gallo-O'Connell and because Gallo-O'Connell reported it to Human Resources and Labor Relations, UMass knew or should have known of the discrimination to which Gallo-O'Connell was being subjected.

57. UMass had a legal duty and obligation, under law and its own policies, to adequately, promptly, and fairly investigate and remedy Gallo-O'Connell's complaints of discrimination.

58. UMass refused or failed to adequately investigate and remedy Gallo-O'Connell's complaints, or to take steps reasonably calculated to remedy or deter further discrimination. UMass' actions were done with knowledge that lack of action would force Gallo-O'Connell to resign and as retaliation for reporting discrimination.

59. As a result of the discrimination and retaliation as outlined above, and the failure to investigate and remedy the discrimination, Gallo-O'Connell was constructively discharged and suffered damages, including emotional distress, loss of wages, and other damages.

**EXHAUSTION OF REMEDIES**

60. A presentment letter as required by M.G.L. c. 258, § 4 was served on UMass through Ken Toong, Nicholas Marshall and Kevin Wissmann on June 14, 2011. Gallo-O'Connell negotiated through the summer of 2011 with counsel for UMass. Negotiations broke down, on or about August 10, 2011, after Gallo-O'Connell sought a revised counter-offer from UMass. UMass never responded, and therefore fully and finally denied Gallo-O'Connell's claim.

61. Pursuant to the state and federal law requirements, on November 9, 2011, Gallo-O'Connell filed charges of discrimination at the Massachusetts Commission Against Discrimination and Equal Employment Opportunity Commission before filing this complaint.

62. On August 27, 2012, the Equal Opportunity Employment Commission issued a Dismissal and Notice of Rights with respect to Gallo-O'Connell's charge of discrimination.

### COUNT I
### (Violation of 42 U.S.C. §2000e-2&3)
### (as to UMass)

The actions of UMass as set forth above, and incorporated by reference here, constitute sex discrimination and unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991.

### COUNT II
### (Violation of M.G.L. c. 151B, § 4(1))
### (all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here, constitute sex discrimination in violation of M.G.L. c. 151B § 4(1).

## COUNT III
### (Violation of M.G.L. c. 151B, § 4(4))
### (all Defendants)

The actions of the Defendants as set forth above, and incorporated by reference here, constitute unlawful retaliation against Gallo-O'Connell in violation of M.G.L. c. 151B § 4(4).

## COUNT IV
### Failure to investigate and remedy complaints of employment discrimination
### (Violation of M.G.L. c. 151B)
### (as to UMass)

As set forth above, and incorporated by reference here, UMass failed or refused to adequately, promptly, and fairly investigate and remedy Gallo-O'Connell's complaints of discrimination.  UMass' failure to adequately investigate and remedy Gallo-O'Connell's complaints violates M.G.L. c. 151B.

## COUNT V
### Violation of M.G.L. c. 151B, §4(5)
### Aiding and abetting
### (as to Defendants Toong and Eichstaedt)

As set forth above, and incorporated by reference here, Toong's and Eichstaedt's actions constitute aiding and abetting, in violation of M.G.L. c. 151B, §4(5).

## COUNT VI
### Violation of M.G.L. c. 151B, §4(4A)
### Interference
### (as to Defendants Toong and Eichstaedt)

As set forth above, and incorporated by reference here, Toong's and Eichstaedt's actions constitute interference with Gallo-O'Connell's right to be free of discrimination in her workplace, in violation of M.G.L. c. 151B, §4(4A).

## COUNT VII
### Violation of M.G.L. c. 151B, §4(3)
### (as to UMass)

As set forth above, and incorporated by reference here, Toong's interview questions to

Gallo-O'Connell violate of M.G.L. c. 151B.

WHEREFORE, Gallo-O'Connell requests that this Court order the following relief:

a) Grant a permanent injunction banning UMass, its officers, successors, assigns, and all persons in active concert or participation with them, from discrimination against women with children or retaliation or any other employment practice that discriminate against women with children or retaliates against an employee who has complained of discrimination;

b) Grant a permanent injunction ordering UMass, its officers, successors, assigns, and all persons in active concert or participation with them, to take steps which will prevent retaliatory behavior against employees who complain about discrimination;

c) Order UMass to institute and carry out policies, practices, and programs that eradicate discrimination towards women with children;

d) Order UMass to pay Gallo-O'Connell:

   1) Lost wages and benefits;

   2) Future lost wages and benefits;

   3) Emotional distress damages;

   4) Punitive damages;

   5) Attorneys' fees and costs as provided for by statute; and

   6) Any other relief to which Gallo-O'Connell may be entitled.

## JURY DEMAND

Gallo-O'Connell hereby demands a trial by jury on all of her claims.

                                                Respectfully submitted,
                                                MARCIE GALLO-O'CONNELL,
                                                By her attorney,

Dated: November 20, 2012           /s/Rebecca G. Pontikes
                                                Rebecca G. Pontikes, BBO # 637157
                                                PONTIKES LAW, LLC
                                                77 Franklin Street, 3rd Floor
                                                Boston, MA 02110
                                                (617) 357-1888
                                                rpontikes@pontikeslawllc.com